Opinion issued May 22, 2003












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00452–CV




VECELLIO INSURANCE AGENCY, INC., Appellant

V.

VANGUARD UNDERWRITERS INSURANCE COMPANY, Appellee

*****

VANGUARD UNDERWRITERS INSURANCE COMPANY, Appellant

V.

VECELLIO INSURANCE AGENCY, INC., Appellee




On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 97-19265




O P I N I O N

          This case involves the vestiges of the common law indemnity cause of action
and the proper manner for submitting such cause of action to the jury. Vanguard
Underwriters Insurance Company sued Vecellio Insurance Agency, its independent
agent, under the theory of common law indemnity for damages that Vanguard paid
one of its insureds. Vanguard contended that it was liable only because of Vecellio’s
misrepresentations to the insured regarding coverage, and that it was entitled to
indemnity from Vecellio for this vicarious liability. Because we hold that the
common law indemnity cause of action was improperly submitted to the jury in this
case, we reverse the judgment of the trial court and render judgment that Vanguard
take nothing from Vecellio. Because we render the judgment, we need not address
Vanguard’s appellate issue regarding the sufficiency of the damages awarded.
FACTS
The Incident Giving Rise to the Claim
          In November 1991, a man and woman were kidnapped and taken to a vacant
house on Drew Street, where the woman was raped and the man was murdered. The
woman and the man’s heirs sued the owner of the property, Nicholas DeLeonardis
(“the insured”), who then made a claim under his homeowner’s policy, which had
been issued by Vanguard.
Vanguard’s Response
          A Vanguard adjuster, Gayle St. John, began an investigation of the incident,
during which she took the statement of Lauren Gillespie, the agent for Vecellio who
had placed the policy with Vanguard. Gillespie told St. John that the insured had
contacted Gillespie in October 1991 to renew the insurance on his home. Gillespie
said that the insured wanted the “same coverage” that he had had under a policy she
had placed for him when she was working for a previous employer.


 Gillespie said
that she recalled that the insured had faxed her the first page of the declaration sheet
from his previous policy, but had not sent her the second page, which contained the
amendment extending coverage to the Drew Street property. As a result, the
application did not request coverage for Drew Street, and the policy issued by
Vanguard to the insured did not provide coverage for the Drew Street property.
          St. John also discovered that Gillespie had, after receiving notice of the loss at
Drew Street, attempted to create coverage retroactively by adding an endorsement to
the declarations page and requesting that Vanguard’s underwriters backdate the
coverage.
          On August 26, 1992, after discovering that the Drew Street property was not
covered, Vanguard issued a reservation of rights letter to the insured, which was
based, at least in part, on Gillespie’s representation that the insureds had not faxed the
complete declarations page to her and had apparently signed the application, which
did not request coverage for the Drew Street property, without reading it.
          In November 1992, after much negotiation with the insurer and the excess
carrier, Vanguard denied coverage, and the excess carrier took up the insured’s
defense. The excess insurer eventually discovered that Gillespie had never actually
spoken to the insured about the coverages he wanted and that the insured had not
faxed the declarations page of the prior policy to Gillespie; Gillespie’s father, also an
insurance agent who had previously worked with the insured, had provided her with
the declarations page. The excess insurer also found out that the insured had never
reviewed and signed the application; Gillespie had. Once aware of the
inconsistencies in Gillespie’s statements, Vanguard resumed the insured’s defense.
In June 1994, the insured settled with the plaintiffs, and Vanguard tendered its policy
limits of $300,000.
The Present Lawsuit and The Previous Appeal
          Vanguard then filed this suit against Vecellio, seeking to recover the money it
had expended in defending and settling a claim for which there was no coverage. 
Vanguard alleged fraud, common law and statutory indemnity, breach of the duty of
good faith and fair dealing, breach of contract, negligence, and violations of the
Insurance Code. Vecellio moved for summary judgment, alleging that all causes of
action were barred by limitations. The trial court agreed and granted summary
judgment for Vecellio. On appeal, this Court agreed that all causes of action were
time barred, except the claim for common law indemnity, and, accordingly, we
reversed and remanded the common law indemnity claim for further proceedings. 
See Vanguard Underwriters Ins. Co. v. Vecellio Ins. Agency, Inc., Cause No. 01-98-009860-CV (Tex. App.—Houston [1st Dist.] 1999, no pet.) (not designated for
publication). 
The Trial after Remand
          After trial on the merits, the jury found in favor of Vanguard and awarded
$260,000 in damages, $97,011.34 in attorney’s fees, and $201,686.95 in prejudgment
interest. Vecellio brings this appeal, contending that the jury charge was erroneous. 
Vanguard also appeals, contending the damages awarded were insufficient.
COMMON LAW INDEMNITY
          In four related points of error, Vecellio contends the trial court erred by
refusing to submit a predicate question to the jury establishing that Vicellio
committed a tort, for which Vanguard was vicariously liable. Similarly, Vecellio
argues that a jury verdict based on common law indemnity for respondeat superior
liability cannot stand absent a jury finding establishing an underlying tort by the
agent.
Common Law Indemnity for Vicarious Liability
          Under Texas law, the availability of common law indemnity is extremely
limited. Cypress Creek Util. Serv. Co. v. Muller, 640 S.W.2d 860, 864 (Tex. 1982);
B & B Auto Supply, Sand Pit & Trucking Co. v. Cent. Freight Lines, Inc., 603 S.W.2d
814, 816-17 (Tex. 1980). Common law indemnity survives in Texas only in products
liability actions to protect an innocent retailer in the chain of distribution and in
negligence actions to protect a defendant whose liability is purely vicarious in nature. 
Aviation Office of Am., Inc. v. Alexander & Alexander of Tex., Inc., 751 S.W.2d 179,
180 (Tex. 1988). Vicarious liability is liability placed upon one party for the conduct
of another, based solely upon the relationship between the two. St. Anthony’s Hosp.
v. Whitfield, 946 S.W.2d 174, 178 (Tex. App.—Amarillo 1997, writ denied). Under
the doctrine of respondeat superior, an employer is exposed to liability not because
of any negligence on its part, but because of the employee’s negligence in the scope
of that employment. Marange v. Marshall, 402 S.W.2d 236, 238 (Tex. Civ.
App.—Corpus Christi 1966, writ ref’d n.r.e.). Therefore, in a case in which one
defendant’s liability is premised solely on respondeat superior, that defendant’s
liability is purely vicarious, and a claim for common law indemnity exists. St.
Anthony’s Hosp., 946 S.W.2d at 178. For a right of indemnity based on vicarious
liability to exist, the injured party must have a cause of action against the indemnitor,
that is, the one whose action caused the indemnitee to be vicariously liable. 
Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 446 (Tex. 1989); City of Houston
v. Watson, 376 S.W.2d 23, 33 (Tex. Civ. App.—Houston 1964, writ ref’d n.r.e.). 
There is no right of indemnity against a defendant who is not liable to the plaintiff. 
See Plas-tex, Inc., 772 S.W.2d at 446; Hunter v. Fort Worth Capital Corp., 620
S.W.2d 547, 553 (Tex. 1981). 
          In Royal Globe Insurance Company v. Bar Consultants, Inc., 577 S.W.2d 688,
694 (Tex. 1979), the supreme court held that an insurance carrier may be held
vicariously liable for the affirmative misrepresentations by the local recording agent
regarding the scope of coverage. Again, in Celtic Life Ins. Co. v. Coats, 885 S.W.2d
96, 98 (Tex. 1994), the supreme court reiterated that “[a]n insurance company is
generally liable for any misconduct by an agent that is within the actual or apparent
scope of the agent’s authority.” The supreme court further recognized that such
liability would, in fact, be vicarious liability. See id., 885 S.W.2d at 99. Thus, an
insurer, such as Vanguard, has an indemnity cause of action against one of its own
agents if the agent’s conduct results in vicarious liability for the insurer.
The Jury Charge in This Case
          Apparently in accordance with the above-quoted language in Celtic Life, the
trial court submitted the following question in connection with Vanguard’s common
law liability claim:
Did Vanguard Underwriters Insurance Company have an obligation to
defend Nicholas DeLeonardis solely as a proximate cause of the
misconduct, if any, of Vecellio Insurance Agency?

          The jury answered the question affirmatively. Vecellio contends that the
question was insufficient to support a recovery for common law indemnity based on
respondeat superior liability because it asks only about undefined “misconduct,” and
does not establish that Vecellio committed a tortious act for which Vanguard was
held vicariously liable. We agree. While Royal Globe and Celtic Life stand for the
general proposition that an insurer may be held vicariously liable for the actions of
its agents, neither is an indemnity case, and neither gives any guidance for how such
an indemnity case should be submitted to a jury. Instead, we seek guidance from
other cases involving common law indemnity for vicarious liability.
          In Humana Hospital Corporation v. American Medical Systems, Inc., 785
S.W.2d 144, 145 (Tex. 1990), the supreme court addressed the issue of common law
indemnity for an innocent seller of a defectively manufactured product. The issue
before the court was whether there had to be a judicial determination of the
manufacturer’s liability before the seller could seek indemnity from the manufacturer
for damages paid to the injured party. The court held that absent a judicial
determination or judicial admission of liability by the manufacturer, the seller’s claim
for indemnity against the manufacturer was premature. Id. at 145. In so holding, the
court stated as follows:
Generally speaking, a person who, without personal fault, has become
subject to tort liability for the unauthorized and wrongful conduct of
another, is entitled to full indemnity from the other for expenditures
properly made to discharge the liability. . . . In this cause, there has been
no judicial determination—or admission—that [the manufacturer] was,
or could have been, legally liable to [the injured party] in any way. 
Unless and until there is such a determination, [the seller’s] claim for
indemnity is premature.

Id. Although not an insurance case, Humana Hospital does involve vicarious
liability and common law indemnity, and clearly supports the proposition that a
principal has no right to indemnity until after there has been a judicial determination
that the agent is liable to the injured party. This rule is in accord with other indemnity
cases that require liability on the part of the agent before the principal can recover
indemnity. See Plas-Tex, Inc., 772 S.W.2d at 446; Hunter, 620 S.W.2d at 553. 
          Furthermore, in Celtic Life, the very case upon which Vanguard relies upon to
support the jury question in this case, the trial court did, in fact, submit a question
asking whether the agent had made misrepresentations that were a producing cause
of damages to the insured. 885 S.W.2d at 99. Therefore, in Celtic Life, the necessary
predicate finding of a tort by the agent was established by the jury verdict.
          The jury question in this case did not establish that Vecellio could be held
legally liable to DeLeonardis. Instead, it asked whether Vanguard’s duty to defend
DeLeonardis arose from Vecellio’s “misconduct.” Misconduct was not defined, and
a jury finding of “misconduct” by Vecellio, without further instruction, would not
establish legal liability to DeLeonardis. The jury question submitted allowed the jury
to award Vanguard indemnity without establishing the necessary predicate of
respondeat superior liability for Vecellio’s torts. See Torrington v. Stutzman, 46
S.W.3d 829, 838 (Tex. 2000) (holding, in analogous situation, that broad-form
negligence question, in case where negligence is based on voluntary undertaking, was
insufficient because it did not establish necessary factual predicate for a negligent
undertaking duty). Without a jury finding, or other legal determination, establishing
Vecellio’s liability to DeLeonardis, Vanguard’s recovery for common law indemnity
cannot stand.
          Vecellio objected to the omission of a predicate question establishing its
liability to DeLeonardis, and also requested an instruction defining “misconduct,”
both of which objections the trial court overruled.


 In light of our previous
discussion, we conclude that such a ruling was erroneous. The charge should have
included (1) a predicate question establishing that Vecellio committed a tort and (2)
a question establishing that Vanguard was vicariously liable for Vecellio’s tort under
the theory of respondeat superior.
          Having decided that there was error in the jury charge, we must now determine 
the appropriate remedy.
Remand or Rendition?
          In Torrington Co. v. Stutzman, the supreme court addressed the issue of
erroneous jury submissions and the proper disposition thereof. 46 S.W.3d at 838. 
The court noted that a rendition is proper if the question submitted is immaterial, but
a remand is required if the question submitted was merely defective. Id. The court
stated held that a jury question is immaterial when required factual predicates for the
submission of that question are not met. Id. Because the factual predicate
establishing Vecellio’s liability was not shown, we conclude that the question
establishing Vanguard’s right to indemnity was immaterial. Furthermore, the jury
question submitted in this case asked whether Vanguard had an obligation to defend
DeLeonardis. Whether an insurer has a duty to defend is a question of law for the
court. State Farm Gen. Ins. Co. v. White, 955 S.W.2d 474, 475 (Tex. App.—Austin
1997, no writ); State Farm Lloyd’s v. Kessler, 932 S.W.2d 732, 735 (Tex. App.—Fort
Worth 1996, writ denied). Thus, jury question number one, which submitted the issue
of duty to defend to the jury, and the jury finding thereon, were immaterial. 
Therefore, we reverse the judgment of the trial court and render judgment that
Vanguard take nothing from Vecellio.







          Having sustained Vecellio’s points of error relating to the jury charge, we need
not address Vanguard’s appellate issues regarding damages, and, thus, decline to do
so.
 
 
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.