**VECELLIO INSURANCE AGENCY, INC., Appellant,**

v.

**VANGUARD UNDERWRITERS INSURANCE COMPANY, Appellee.**

**Vanguard Underwriters Insurance Company, Appellant,**

v.

**Vecellio Insurance Agency, Inc., Appellee.**

No. 01–02–00452–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 16, 2003.

Jefferson Hunt Read, Oldenettel & Associates, Houston, TX, for Appellant.

Michael Phillips, Phillips & Akers, P.C., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HANKS.

## OPINION ON REHEARING

SHERRY RADACK, Chief Justice.

On this day, the Court considered appellant's motion for rehearing. The motion is **GRANTED.** Accordingly, we withdraw our opinion of May 22, 2003, and issue this opinion in its stead.

This case involves the vestiges of the common law indemnity cause of action and the proper manner for submitting such cause of action to the jury. Vanguard Underwriters Insurance Company sued Vecellio Insurance Agency, its independent agent, under the theory of common law indemnity for damages that Vanguard paid one of its insureds. Vanguard contended that it was liable only because of Vecellio's misrepresentations to the insured regarding coverage, and that it was entitled to indemnity from Vecellio for this vicarious liability. Because we hold that the common law indemnity cause of action was improperly submitted to the jury in this case, we reverse the judgment of the trial court and remand for further proceedings Because we have reversed the judgment in favor of Vanguard, we need not address Vanguard's appellate issue regarding the sufficiency of the damages awarded.

## FACTS

### The Incident Giving Rise to the Claim

In November 1991, a man and woman were kidnapped and taken to a vacant house on Drew Street, where the woman was raped and the man was murdered. The woman and the man's heirs sued the owner of the property, Nicholas DeLeonardis ("the insured"), who then made a claim under his homeowner's policy, which had been issued by Vanguard.

### Vanguard's Response

A Vanguard adjuster, Gayle St. John, began an investigation of the incident, during which she took the statement of Lauren Gillespie, the agent for Vecellio who had placed the policy with Vanguard. Gillespie told St. John that the insured had contacted Gillespie in October 1991 to renew the insurance on his home. Gillespie said that the insured wanted the "same coverage" that he had had under a policy she had placed for him when she was working for a previous employer.[1] Gillespie said that she recalled that the insured had faxed her the first page of the declaration sheet from his previous policy, but had not sent her the second page, which contained the amendment extending coverage to the Drew Street property. As a result, the application did not request coverage for Drew Street, and the policy issued by Vanguard to the insured did not provide coverage for the Drew Street property.

St. John also discovered that Gillespie had, after receiving notice of the loss at Drew Street, attempted to create coverage retroactively by adding an endorsement to the declarations page and requesting that Vanguard's underwriters backdate the coverage.

On August 26, 1992, after discovering that the Drew Street property was not covered, Vanguard issued a reservation of rights letter to the insured, which was based, at least in part, on Gillespie's representation that the insureds had not faxed the complete declarations page to her and had apparently signed the application, which did not request coverage for the Drew Street property, without reading it.

In November 1992, after much negotiation with the insurer and the excess carrier, Vanguard denied coverage, and the excess carrier took up the insured's defense. The excess insurer eventually discovered that Gillespie had never actually spoken to the insured about the coverages he wanted and that the insured had not faxed the declarations page of the prior policy to Gillespie; Gillespie's father, also an insurance agent who had previously worked with the insured, had provided her with the declarations page. The excess insurer also found out that the insured had never reviewed and signed the application; Gillespie had. Once aware of the inconsistencies in Gillespie's statements, Vanguard resumed the insured's defense. In June 1994, the insured settled with the plaintiffs, and Vanguard tendered its policy limits of $300,000.

### The Present Lawsuit and The Previous Appeal

Vanguard then filed this suit against Vecellio, seeking to recover the money it had expended in defending and settling a claim for which there was no coverage. Vanguard alleged fraud, common law and statutory indemnity, breach of the duty of good faith and fair dealing, breach of contract, negligence, and violations of the In-

---

1. Under his previous policy, the insured had $300,000 in homeowners' coverage, with a separate one million dollar umbrella. The primary policy further included an HO–225 "additional premises endorsement," which included coverage for the vacant property on Drew Street.

surance Code. Vecellio moved for summary judgment, alleging that all causes of action were barred by limitations. The trial court agreed and granted summary judgment for Vecellio. On appeal, this Court agreed that all causes of action were time barred, except the claim for common law indemnity, and, accordingly, we reversed and remanded the common law indemnity claim for further proceedings. *See Vanguard Underwriters Ins. Co. v. Vecellio Ins. Agency, Inc.,* Cause No. 01–98–009860–CV, 1999 WL 159833 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (not designated for publication).

### The Trial after Remand

After trial on the merits, the jury found in favor of Vanguard and awarded $260,000 in damages, $97,011.34 in attorney's fees, and $201,686.95 in prejudgment interest. Vecellio brings this appeal, contending that the jury charge was erroneous. Vanguard also appeals, contending the damages awarded were insufficient.

### COMMON LAW INDEMNITY

In four related points of error, Vecellio contends the trial court erred by refusing to submit a predicate question to the jury establishing that Vecellio committed a tort, for which Vanguard was vicariously liable. Similarly, Vecellio argues that a jury verdict based on common law indemnity for respondeat superior liability cannot stand absent a jury finding establishing an underlying tort by the agent.

### Common Law Indemnity for Vicarious Liability

 Under Texas law, the availability of common law indemnity is extremely limited. *Cypress Creek Util. Serv. Co. v. Muller,* 640 S.W.2d 860, 864 (Tex.1982); *B & B Auto Supply, Sand Pit & Trucking Co. v. Cent. Freight Lines, Inc.,* 603 S.W.2d 814, 816–17 (Tex.1980). Common law indemnity survives in Texas only in

products liability actions to protect an innocent retailer in the chain of distribution and in negligence actions to protect a defendant whose liability is purely vicarious in nature. *Aviation Office of Am., Inc. v. Alexander & Alexander of Tex., Inc.,* 751 S.W.2d 179, 180 (Tex.1988). Vicarious liability is liability placed upon one party for the conduct of another, based solely upon the relationship between the two. *St. Anthony's Hosp. v. Whitfield,* 946 S.W.2d 174, 178 (Tex.App.-Amarillo 1997, writ denied). Under the doctrine of respondeat superior, an employer is exposed to liability not because of any negligence on its part, but because of the employee's negligence in the scope of that employment. *Marange v. Marshall,* 402 S.W.2d 236, 238 (Tex.Civ. App.-Corpus Christi 1966, writ ref'd n.r.e.). Therefore, in a case in which one defendant's liability is premised solely on respondeat superior, that defendant's liability is purely vicarious, and a claim for common law indemnity exists. *St. Anthony's Hosp.,* 946 S.W.2d at 178. For a right of indemnity based on vicarious liability to exist, the injured party must have a cause of action against the indemnitor, that is, the one whose action caused the indemnitee to be vicariously liable. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 446 (Tex.1989); *City of Houston v. Watson,* 376 S.W.2d 23, 33 (Tex.Civ.App.-Houston 1964, writ ref'd n.r.e.). There is no right of indemnity against a defendant who is not liable to the plaintiff. *See Plas-Tex, Inc.,* 772 S.W.2d at 446; *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 553 (Tex.1981).

 In *Royal Globe Insurance Company v. Bar Consultants, Inc.,* 577 S.W.2d 688, 694 (Tex.1979), the supreme court held that an insurance carrier may be held vicariously liable for the affirmative misrepresentations by the local recording agent regarding the scope of coverage.

Again, in *Celtic Life Ins. Co. v. Coats,* 885 S.W.2d 96, 98 (Tex.1994), the supreme court reiterated that "[a]n insurance company is generally liable for any misconduct by an agent that is within the actual or apparent scope of the agent's authority." The supreme court further recognized that such liability would, in fact, be vicarious liability. *See id.,* 885 S.W.2d at 99. Thus, an insurer, such as Vanguard, has an indemnity cause of action against one of its own agents if the agent's conduct results in vicarious liability for the insurer.

### The Jury Charge in This Case

Apparently in accordance with the above-quoted language in *Celtic Life,* the trial court submitted the following question in connection with Vanguard's common law liability claim:

Did Vanguard Underwriters Insurance Company have an obligation to defend Nicholas DeLeonardis solely as a proximate cause of the misconduct, if any, of Vecellio Insurance Agency?

The jury answered the question affirmatively. Vecellio contends that the question was insufficient to support a recovery for common law indemnity based on respondeat superior liability because it asks only about undefined "misconduct," and does not establish that Vecellio committed a tortious act for which Vanguard was held vicariously liable. We agree. While *Royal Globe* and *Celtic Life* stand for the general proposition that an insurer may be held vicariously liable for the actions of its agents, neither is an indemnity case, and neither gives any guidance for how such an indemnity case should be submitted to a jury. Instead, we seek guidance from other cases involving common law indemnity for vicarious liability.

In *Humana Hospital Corporation v. American Medical Systems, Inc.,* 785 S.W.2d 144, 145 (Tex.1990), the supreme court addressed the issue of common law indemnity for an innocent seller of a defectively manufactured product. The issue before the court was whether there had to be a judicial determination of the manufacturer's liability before the seller could seek indemnity from the manufacturer for damages paid to the injured party. The court held that absent a judicial determination or judicial admission of liability by the manufacturer, the seller's claim for indemnity against the manufacturer was premature. *Id.* at 145. In so holding, the court stated as follows:

Generally speaking, a person who, without personal fault, has become subject to tort liability for the unauthorized and *wrongful* conduct of another, is entitled to full indemnity from the other for expenditures properly made to discharge the liability.... In this cause, there has been no judicial determination—or admission—that [the manufacturer] was, or could have been, legally liable to [the injured party] in any way. Unless and until there is such a determination, [the seller's] claim for indemnity is premature.

*Id.* Although not an insurance case, *Humana Hospital* does involve vicarious liability and common law indemnity, and clearly supports the proposition that a principal has no right to indemnity until after there has been a judicial determination that the agent is liable to the injured party. This rule is in accord with other indemnity cases that require liability on the part of the agent before the principal can recover indemnity. *See Plas–Tex, Inc.,* 772 S.W.2d at 446; *Hunter,* 620 S.W.2d at 553.

Furthermore, in *Celtic Life,* the very case upon which Vanguard relies to support the jury question in this case, the trial court did, in fact, submit a question asking whether the agent had made misrepresen-

tations that were a producing cause of damages to the insured. 885 S.W.2d at 99. Therefore, in *Celtic Life*, the necessary predicate finding of a tort by the agent was established by the jury verdict.

The jury question in this case did not establish that Vecellio could be held legally liable to DeLeonardis. Instead, it asked whether Vanguard's duty to defend DeLeonardis arose from Vecellio's "misconduct." Misconduct was not defined, and a jury finding of "misconduct" by Vecellio, without further instruction, would not establish legal liability to DeLeonardis. The jury question submitted allowed the jury to award Vanguard indemnity without establishing the necessary predicate of respondeat superior liability for Vecellio's torts. *See Torrington v. Stutzman*, 46 S.W.3d 829, 838 (Tex.2000) (holding, in analogous situation, that broad-form negligence question, in case where negligence is based on voluntary undertaking, was insufficient because it did not establish necessary factual predicate for a negligent undertaking duty). Without a jury finding, or other legal determination, establishing Vecellio's liability to DeLeonardis, Vanguard's recovery for common law indemnity cannot stand.

Vecellio objected to the omission of a predicate question establishing its liability to DeLeonardis, and also requested an instruction defining "misconduct," both of which objections the trial court overruled.[2] In light of our previous discussion, we conclude that such a ruling was erroneous. The charge should have included (1) a predicate question establishing that Vecellio committed a tort and (2) a question

establishing that Vanguard was vicariously liable for Vecellio's tort under the theory of respondeat superior.

Having decided that there was error in the jury charge, we must now determine the appropriate remedy.

### Reverse and Remand or Reverse and Render?

 In *Torrington Co. v. Stutzman*, the supreme court addressed the issue of erroneous jury submissions and the proper disposition thereof. 46 S.W.3d at 838. The court noted that a rendition is proper if the question submitted is immaterial, but a remand is required if the question submitted was merely defective. *Id.* A jury question is immaterial in three situations: (1) if the question should not have been submitted; (2) if the question was rendered immaterial by other findings, or (3) if the question called for a finding not within the jury's province, such as presenting a question of law for the court. *Spencer v. Eagle Star Ins. Co. of America*, 876 S.W.2d 154, 157 (Tex.1994). A jury question, however, is merely defective if the plaintiff "plainly attempts" to request a jury finding of a recognized cause of action. *See id.*

In *Southeastern Pipe Line Co. v. Tichacek*, the plaintiff submitted a jury question that failed to include the appropriate predicate for a recovery of damages. 997 S.W.2d 166, 171–72 (Tex.1999). The supreme court held that the question was merely defective because it plainly attempted to request a jury finding on a recognized cause of action, but did so improperly. The defective question "simply

---

**2.** Vecellio objected as follows: "We think the Court should submit an issue to the jury asking whether or not there was negligent misrepresentation, which we have tendered, because if the jury finds negligent misrepresentation, factually, the Court can then find as a matter of law things [sic] that were entitled to indemnity." The Court responded, "Which I have refused and denied." We believe that this objection was sufficient under *State Dept. of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992) and Tex.R.App. P. 33.1.(a)(1).

requested an improper submission of the issue to the jury." *Id.* at 172.

In *Spencer*, the plaintiff brought a claim against its insurance company, alleging that the insurer committed an unfair practice in the business of insurance. 876 S.W.2d at 156. The jury charge asked whether any act by the insurer was an unfair practice in the business of insurance, but did not instruct the jury regarding the specific actions for which the insurer could be held liable. *Id.* at 157. The supreme court held that this charge, while defective, was not immaterial because it "plainly attempted" to submit a cause of action. *Id.* The court noted that this was not a case in which the plaintiff had abandoned a theory of recovery, or failed to submit any jury question on a controlling issue. *Id.*

In *Borneman v. Steak & Ale of Texas, Inc.*, the plaintiff brought a Dram Shop Act lawsuit against the restaurant that served alcohol to the driver of a vehicle that injured the plaintiff in an accident. 22 S.W.3d 411, 412 (Tex.2000). The jury charge asked whether the defendant's "conduct" was the sole proximate cause of the accident. *Id.* It did not, however, limit such conduct to that which, under the Dram Shop Act, could result in the restaurant's liability, i.e. conduct causing damages that were linked to the patron's intoxication. *Id.* at 413. The supreme court held that the failure to limit the restaurant's misconduct in the charge caused the jury submission to be defective, not immaterial. *Id.* Accordingly, the supreme court remanded the cause. *Id.* at 414.

In both *Spencer* and *Borneman*, the liability questions were defective because they permitted the jury to return a verdict on misconduct not actionable under Texas law. *See Spencer*, 876 S.W.2d at 157; *Borneman*, 22 S.W.3d at 413. Because the

jury questions in these cases permitted the jury to find liability on non-actionable conduct, the supreme court found the submissions defective, but not immaterial.

■ Similarly, in this case, we have held that the jury question was erroneous because it did not define the actionable "misconduct" of Vecellio. Instead, it attempted to submit the factual predicate necessary for recovery on the cause of action by permitting the jury to hold Vecellio liable for "any misconduct," rather than holding Vecellio liable only for an actionable tort under Texas law. Therefore, under the authority of both *Spencer* and *Borneman*, we conclude that the erroneous jury question in this case was merely defective, but not immaterial. Vanguard "plainly attempted" to submit its common-law indemnity cause of action and the necessary predicate tort finding, even though it did so erroneously.

■ Furthermore, even if we were to determine that the jury submission was immaterial, this Court could, in the interest of justice, remand rather than render. *See Torrington*, 46 S.W.3d at 840; Tex. R.App. P. 43.3. The supreme court has held that a remand in the interest of justice may be appropriate if the appellate court clarifies the way in which a claim should be submitted. *Id.* at 841. In this case, neither party cited any authority, and we could find none, to illustrate how a common-law indemnity cause of action should be submitted to the jury.[3] Additionally, we note that there is no pattern jury charge for common-law indemnity. Therefore, our opinion clarifies the way in which a common-law indemnity claim should be submitted to the jury. For this reason alone, remand in the interest of justice, rather than rendition, is appropriate.

---

3. Many cases discuss the elements of a common-law indemnity cause of action, but none discuss the proper jury charge for such a case.

Accordingly, we reverse the judgment of the trial court and remand for further proceedings. Having sustained Vecellio's points of error relating to the jury charge, we need not address Vanguard's appellate issues regarding damages, and, thus, decline to do so.