Opinion filed August 31, 2006















 
 
  
 
 







 
 
  
 
 




Opinion filed August 31, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00116-CV 

 

                                                    __________

 

                                  SEELIN MEDICAL, INC., Appellant

 

                                                             V.

 

                               INVACARE
CORPORATION, Appellee

 



 

                                              On
Appeal from the 70th District Court

 

                                                             Ector County, Texas

 

                                                   Trial
Court Cause No. A-115,714

 



 

                                                                   O
P I N I O N

 








This is an indemnity dispute between codefendants
in a products liability action.  Seelin
Medical, Inc. filed a cross-claim against Invacare Corporation contending that
Seelin had been sued in a products liability action, that it was an innocent
seller, and that it was entitled to indemnity from Invacare, the product=s manufacturer, pursuant to Chapter 82
of the Civil Practice and Remedies Code.[1]    The trial court granted Invacare=s motion for summary judgment finding
that it had no duty to indemnify Seelin. 
We affirm in part and reverse and remand in part. 

                                                               Background
Facts

Reynaldo Baeza sued Seelin, Invacare, and
Graham-Field, Inc. alleging strict products liability and negligence actions
for injuries he sustained when his walker collapsed.[2]  Baeza contended that the walker and a
platform attached to the walker were unreasonably defective.  Invacare manufactured and distributed the
walker.  Graham-Field manufactured and
distributed the platform.  Seelin sold
the walker and attachment to Baeza.

Invacare filed a no-evidence motion for summary
judgment against Baeza.  During the
pendency of that motion, Seelin filed a cross-claim against Invacare asserting
a statutory right of indemnity pursuant to Section 82.002.  Invacare=s
no-evidence motion was granted without prejudice as to Seelin=s cross-claim.  Baeza then filed a third amended
petition.  This petition asserted no
claim against Invacare, nor did it allege that the walker was defective.  Instead, Baeza alleged only that the platform
assembly was defective.  He asserted
claims against Graham-Field as the manufacturer and Seelin as the seller.

Invacare challenged Seelin=s
cross-claim with both a traditional and a no-evidence motion for summary
judgment.  The trial court held a hearing
and subsequently entered an order granting Invacare=s
motion for summary judgment without specifying which motion was being granted.

                                                                         Issues

            Seelin challenges the trial court=s
ruling with two issues.  In the first
issue, Seelin assumes that the trial court granted Invacare=s traditional motion for summary
judgment.  In the second issue, Seelin
assumes that the trial court granted Invacare=s
no-evidence motion.  Seelin asserts in
each issue that the trial court=s
ruling was in error.   

                                                              Standard
of Review








Traditional motions are governed by Tex. R. Civ. P. 166a(c) which provides
that a summary judgment shall be rendered if the evidence properly before the
court indicates that Athere
is no genuine issue as to any material fact and the moving party is entitled to
judgment as a matter of law.@
When a defendant files a traditional motion for summary judgment, it must
either conclusively negate at least one of the essential elements of a
plaintiff=s cause
of action or conclusively establish each element of an affirmative
defense.  Randall=s Food Mkts., Inc. v. Johnson, 891
S.W.2d 640, 644 (Tex.
1995).  If a defendant negates an element
of a plaintiff=s claim,
the burden shifts to the plaintiff who must produce evidence creating a genuine
issue of material fact on that disputed element.  Centeq Realty, Inc. v. Siegler, 899
S.W.2d 195, 197 (Tex.
1995).  

The trial court must assume that all evidence
favorable to the nonmovant is true and must view the evidence in the light most
favorable to the nonmovant.  Specialty
Retailers, Inc. v. DeMoranville, 933 S.W.2d 490, 491 (Tex. 1996). 
The trial court must indulge every reasonable inference and resolve all
doubts in favor of the nonmovant.  Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910,
911 (Tex.
1997).  We review the trial court=s decision as a question of law and,
therefore, utilize a de novo review applying the same presumptions as are
applicable to the trial court.  Eslon
Thermoplastics v. Dynamic Sys., Inc., 49 S.W.3d 891, 896 (Tex. App.CAustin
2001, no pet.). 

No-evidence motions are governed by Tex. R. Civ. P. 166a(i).  The party without the burden of proof may
file a no-evidence motion after an adequate time for discovery has passed.  The movant asks for summary judgment on the
ground that the nonmoving party lacks supporting evidence for one or more
essential elements of its claim.  Id.  The trial court must sustain the motion
unless the nonmovant produces sufficient evidence to create a genuine issue of
material fact. Id.

A no-evidence motion for summary judgment is
essentially a directed verdict granted before trial to which we apply a legal
sufficiency standard of review.  King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003). 
A no-evidence summary judgment will be sustained when (1) there is a
complete absence of evidence of a vital fact, (2) the trial court is barred by
rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact, (3) the evidence offered to prove a vital fact is no more
than a scintilla, or (4) the evidence conclusively establishes the opposite of
a vital fact.  King Ranch, 118
S.W.3d at 751.

                                What
Indemnity Obligation Does Section 82.002 Impose?








Texas
common law recognized a limited right of indemnity for innocent retailers from
manufacturers.  See, e.g., Bonniwell
v. Beech Aircraft Corp., 663 S.W.2d 816, 819 (Tex. 1984). 
This right placed an onerous burden on sellers who were required to
bring a separate action against the manufacturer.  Freightliner Corp. v. Ruan Leasing Co.,
6 S.W.3d 726, 729 (Tex. App.CAustin
1999), aff=d
sub nom., Meritor Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86 (Tex.
2001).  The seller was required to show
that it sold the product, that the manufacturer was found liable or admitted
its liability to the underlying plaintiff, and that the seller had been forced
to pay damages.  Humana Hosp. Corp. v.
Am. Med. Sys., Inc., 785 S.W.2d 144 (Tex.
1990).

The legislature significantly enhanced a seller=s indemnity rights when it adopted the
Texas Products Liability Act in 1993. 
Codified as Chapter 82 of the Civil Practice and Remedies Code, this
statute imposes a duty upon manufacturers to indemnify sellers in relevant part
as follows:

(a) A manufacturer shall indemnify and hold
harmless a seller against loss arising out of a products liability action,
except for any loss caused by the seller=s
negligence, intentional misconduct, or other act or omission, such as
negligently modifying or altering the product, for which the seller is
independently liable.

 

(b) For purposes of this section, Aloss@
includes court costs and other reasonable expenses, reasonable attorney fees,
and any reasonable damages.

 

(e) The duty to indemnify under this section:

 

(1) applies without regard to the manner in which
theaction is concluded; and

 

(2) is in addition to any duty to indemnify
established by law, contract, or otherwise.

 

Section 82.002.  The
purpose of this section, according to the supreme court, is to require a
manufacturer to indemnify an innocent seller for certain damages and litigation
expenses arising out of a products liability action and to require sellers to
bear the damages and expenses for the losses they cause.  Gen. Motors Corp. v. Hudiburg Chevrolet,
Inc., No. 03-0987, 2006 WL 741552, at *9 (Tex. March 24, 2006); Meritor Auto.,
44 S.W.3d at 88.








The supreme court=s
application of this statute to issues arising during the pendency of a products
liability lawsuit is not unlike the eight-corners rule used to determine an
insurer=s duty to
defend.[3]  In both instances, extrinsic evidence may not
be considered.  Instead, the court has
compared the allegations in a products liability claimant=s pleadings with the language of
Section 82.002 and has found a duty to indemnify exists if a claimant asserts
an allegation against a seller that falls within the statute=s scope.  For example, in Fitzgerald v. Advanced
Spine Fixation Systems, Inc., 996 S.W.2d 864, 867-69 (Tex. 1999), the court
held that pleadings joining a seller as a defendant in a products liability
action were sufficient to invoke the manufacturer=s
duty to indemnify even though it was ultimately determined that the defendant
seller did not sell the injury-causing product.[4]   See also Freeman Fin. Inv. Co. v. Toyota
Motor Corp., 109 S.W.3d 29, 34 (Tex. App.CDallas
2003, pet. denied) (manufacturer=s
summary judgment proof that the defendant retailer did not sell the
injury-causing product did not relieve the manufacturer of its duty to
indemnify because the duty was triggered by the claimant=s
pleading and the claimant continued to allege that the retailer was the seller
and to assert a strict products liability action against it).

When the trial court considered Invacare=s motions for summary judgment against
Seelin, Baeza=s live
pleading was his fourth amended petition. 
Invacare argued that, because this petition asserted no claim against it
nor otherwise claimed that any product it manufactured was defective,  Section 82.002 was inapplicable.  Seelin responded that, because Baeza=s original petition alleged that
Invacare=s walker
was defective and because Seelin had been sued as a seller of the walker,
Section 82.002 was applicable and that it was entitled to indemnity.

Neither party asks us to consider extrinsic
evidence.  Instead, both contend that the
issue is resolved solely by looking at Baeza=s
petitions.  They differ in their analysis
of which petition we should consider and the effect of a subsequently amended
petition.  Invacare would have us hold
that, if a claimant abandons a products liability claim against the
manufacturer, the manufacturer=s
duty to indemnify is retroactively eliminated. 
Seelin contends that, if a products liability claimant ever asserts a
claim covered by Section 82.002, then the manufacturer must indemnify the
seller so long as it remains a party.

A.  Does Invacare
Have Any Obligation to Seelin?








Invacare cites us no authority for its argument
that, when Baeza abandoned his claim that Invacare=s
walker was defective, Invacare was retroactively relieved of any duty to
indemnify Seelin.  Invacare focuses
instead on the lack of any complaint against it in Baeza=s
third and fourth amended petitions and, in essence, asks us to consider
subsequent developments during the course of the litigation to determine
whether Invacare ever owed Seelin a duty. 
The supreme court=s
analysis in Fitzgerald, 996 S.W.2d at 864, and Meritor Automotive,
44 S.W.3d at 86, is inconsistent with this position. Those decisions stand for
the proposition that the only subsequent development which would have
retroactive effect is a finding of independent conduct by the seller which
caused the claimant=s
injury.  See 44 S.W.3d at 91.

When Baeza originally filed suit, he alleged that
Invacare=s walker
was defective.  He sued Seelin as the
seller and asserted products liability causes of action against it.  These allegations are sufficient to trigger
Invacare=s duty to
indemnify.  To the extent the trial court
found Invacare had no duty, it erred and Seelin=s
first and second issues are sustained.[5]


B.  Is
Invacare=s Duty To
Indemnify Unlimited?

Seelin contends that, because Invacare=s duty to defend was triggered by Baeza=s original petition, subsequent
petitions are irrelevant.  Seelin=s argument turns on the provision in
Section 82.002(e)(1) that the duty to indemnify Aapplies
without regard to the manner in which the action is concluded.@ 
Seelin contends that, in light of this language, any holding which
limits a manufacturer=s
duty because of subsequently amended pleadings would require the court to
engraft language into the statute.  Seelin
misreads Section 82.002(e)(1).  This
provision does not make subsequent changes in the claimant=s allegations irrelevant C it eliminates the common law
requirement that the seller prove the manufacturer=s
liability to the underlying plaintiff. 
Under the common law, a seller=s
right to indemnity from the manufacturer is dependent upon a finding of liability.  See Humana Hosp., 785 S.W.2d at 144.
Under Section 82.002, however, indemnity is dependent solely upon the presence
of a statutorily covered claim.

Chapter 82 requires manufacturers to indemnify
retailers when they are sued for selling the manufacturer=s allegedly defective product.  It does not require them to indemnify
retailers who are sued for selling the allegedly defective products of
others.   Hudiburg, 2006 WL 741552
at *9. Section 82.001(2) defines a A[p]roducts
liability action@ as:








[A]ny
action against a manufacturer or seller for recovery of damages arising out of
personal injury, death, or property damage allegedly caused by a defective
product whether the action is based in strict tort liability, strict products
liability, negligence, misrepresentation, breach of express or implied
warranty, or any other theory or combination of theories.

 

Section 82.001(4) defines a A[m]anufacturer@ as:

[A]
person who is a designer, formulator, constructor, rebuilder, fabricator,
producer, compounder, processor, or assembler of any product or any component
part thereof and who places the product or any component part thereof in the
stream of commerce.

 

These two definitions, when read together, require some nexus
between the manufacturer and the allegedly defective product.

Baeza originally claimed that his walker and the
attached platform were defective.  We
have previously held that these allegations triggered Invacare=s duty to indemnify Seelin.  But when the trial court considered Invacare=s motions for summary judgment against
Seelin, Baeza had abandoned his claim that the walker was defective and
contended only that the platform was defective. 
He alleged that Graham-Field manufactured the platform and that Seelin
sold it.  His products liability and
negligence claims against Seelin alleged only a breach of duty in connection
with the platform assembly.  Baeza made
no claim that Invacare=s
walker C or anything
else manufactured by Invacare C
was defective.  Finally, Seelin produced
no summary judgment evidence establishing that its continued, as opposed to
original, presence in Baeza=s
litigation was attributable in any way to Invacare.

Seelin=s
position strains the language of the statute. 
Seelin would require Invacare to indemnify it for claims that the
platform assembly C which no
person contended Invacare designed, formulated, constructed, rebuilt,
fabricated, produced, compounded, processed, or assembled C was defective.  The plain language of the statute does not
support such an interpretation.  The
trial court correctly found that Invacare owed no duty to indemnify Seelin for
the claims in Baeza=s third
and fourth amended petition.  Seelin=s issues are overruled to the extent
they challenge this ruling.

                                                         Conclusion








Invacare owed Seelin a duty to indemnify it for
defending claims relating to the walker. 
That duty ended when Baeza was no longer asserting such a claim.  Even though the trial court had granted the
motion for summary judgment on the claim against Invacare, Baeza had not given
up on the claim until he amended his lawsuit and deleted the claim against
Invacare.  He continued to be in a
position to assert that claim in a motion to reconsider the ruling on the
motion for summary judgment; he could have contested the ruling on the motion
for summary judgment on appeal; or he could otherwise have attacked the
ruling.  We hold that Invacare=s duty to indemnify Seelin for
defending the claims pertaining to Invacare and the defective walker ended when
Baeza amended his petition and omitted Invacare and his claims against it.  

The trial court=s
judgment is affirmed except for that part of the judgment which finds that
Invacare owed no duty to indemnify Seelin for its costs in defending claims
pertaining to Invacare prior to the time that Baeza amended his petition and
eliminated claims against Invacare.  That
part of the judgment is reversed and remanded to the trial court for a
determination of the amount of that indemnity.

 

 

RICK STRANGE

JUSTICE

 

August 31, 2006

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.











     [1]Tex. Civ. Prac. & Rem. Code Ann. '' 82.001-.008 (Vernon 2005).





     [2]Graham-Field
is in bankruptcy and is not a party to this appeal.





     [3]For
a description of the eight-corners rule, see Burlington Ins. Co. v. Texas
Krishnas, Inc., 143 S.W.3d 226, 229 (Tex. App.CEastland 2004, no pet.).





     [4]Cf.
American Alliance Ins. Co.  v. Frito-Lay,
Inc., 788 S.W.2d 152, 154 (Tex. App.CDallas
1990, writ dism=d) (AThe duty to defend is not affected by facts ascertained
before suit, developed in the process of litigation, or by the ultimate outcome
of the suit.@).





     [5]This
holding makes it unnecessary for us to distinguish between Invacare=s no-evidence and traditional motions.